UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PETROJEBLA, SA de C.V.,

        Plaintiff,

v                                                  Case No. 19-11439
                                                  Honorable Thomas L. Ludington

BETRON ENTERPRISES, INC.,
BETRON LP GAS, INC.,
RICHARD E. BETRON, JR.,

        Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS, GRANTING DEFENDANTS' MOTION TO AMEND THEIR ANSWER, AND DIRECTING ITS FILING**

Plaintiff PetroJebla, SA de C.V. ("PetroJebla") is a Mexican corporation with its principal place of business in Mexico City, Mexico.[1] ECF No. 1. at PageID.2. On May 16, 2019, PetroJebla filed a complaint against three defendants: Betron Enterprises, Inc. ("BEI"), Betron LP Gas, Inc. ("BLPG"), and Richard E. Betron ("Mr. Betron").

According to PetroJebla's complaint, BEI and BLPG are Michigan corporations with their principal places of business in Twining, Michigan. *Id.* at PageID.3. PetroJebla's complaint does not furnish any other information regarding the corporations besides the fact that PetroJebla entered into a contract with BEI in which BEI agreed to sell PetroJebla specific quantities of liquid propane gas. The Complaint also alleges that Defendant Richard E. Betron is the "sole principal" of BEI and BLPG and that he resides in Twining, Michigan. *Id.*

---

[1] PetroJebla has not furnished any information regarding the goods or services that PetroJebla provides as a corporation.

Summons were issued for BEI, BLPG, and Mr. Betron. ECF Nos. 2, 3, 4. A week later, three separate certificates of service were returned executed respectively for BEI, BLPG, and Mr. Betron. ECF Nos. 7, 8, 9.

# I.

## A.

PetroJebla alleges that it "entered into a contract for the purchase of liquid propane gas, purportedly from 'BETRON ENTERPRISE.'" ECF No. 1 at PageID.3. The contract provides in its entirety:

> TO: GRUPO JEBLA, SA de CV.   June 28, 2017
> Eduardo Cardenas
>
> FROM: BETRON ENTERPRISE
> Richard E. Betron President
> 3303 West River Road
> Sanford Michigan 48657 USA
>
> Full corporate offer to sell/purchase HD propane distillate for 9 months, July 2017 through April 2018 with rolls and extensions
>
> Origin: Houston, 50 rail car loads 30,500 gallons each
>
> Our refinery is offering the following:
> - Product: HD-5 Propane
> - Quantity: 50 tank cars per month
> - Volume: 1,525,000 gallons per month total
> - Delivery period: Monthly quantity basis, weekly delivery
> - Price: Mont Belvieu non tet + $.09 cents. This Price includes the railroad Freight price up to Estation Ramirez, Matamoros, Mexico
> - Pricing period: July 2017 through 2018
> - Vessel acceptance: Vessel to be first class bulk rail cars
>    A. Rail cars delivery to Matamoros, Mexico
>    B. Rail cars proceed-customs & delivery to certified terminal (storage) facility in Matamoros, Mexico
>    C. PetroJebla will only pay for the fee for the Texas forwarding agency, the Mexican Customs broker and all corresponding Mexican customs duties.

> D. PETROJEBLA SA DE CV has 7 days to unload each railcar once places it at the Matamoros facilities. After that, the demurrage charge per day is $75 dlls
> - Unloading rate: Based on 15 rail cars per week
> - Quality: According to the attached specifications
> - Law: American Law
> - Settlement: American Courts
> - Payment terms: Wire transfer amount weekly in advance
> - Delivery Date: Pending schedule from Betron
> - Bank wiring instructions:
>   Betron LP Gas Chemical Bank
>   Midlan [sic], Ml 48640
>   ABA: 0724100143
>   Account Number: 1208206376
>
> Seller: Richard E. Betron Jr.
> 3303 West Rd.
> Sanford, MI 48657

ECF No. 1-2 at PageID.16-17. The contract is signed by "Richard Betron, President, BETRON ENTERPRISE" and "Eduardo Cardenas, GRUPO JEBLA."

In July 2017, PetroJebla made a payment to the "Betron LP Gas Chemical Bank" account identified in the contract.[2] *Id.* According to the complaint, "Defendants shipped propane gas to PetroJebla beginning on or about July 17, 2017." *Id.* On October 17 and 18 of 2017, PetroJebla wired $624,000.00 to the bank account identified in the contract. ECF Nos. 1-3, 1-4. The complaint provides that "Defendants continued shipping propane gas to PetroJebla until early November 2017, at which point all shipments ceased. At that time, Defendants held $209,460 in prepayments for propane gas that had not been shipped."[3] *Id.*

**B.**

A year later, on November 8, 2018, PetroJebla's counsel sent Defendants a letter providing that "[y]ou are currently wrongfully holding Grupo Jebla funds in the amount of $209,000, which

---
[2] PetroJebla's complaint does not provide the amount of this first payment.
[3] PetroJebla's complaint does not provide the exact date of Defendants' final shipment.

places you in clear breach of the contract." ECF No. 1-6. PetroJebla demanded that Defendant "immediately reimburse the full sum of $209,000" or risk the initiation of legal action. Mr. Betron told PetroJebla that he was willing to deliver the propane gas that PetroJebla had paid for. ECF No. 1 at PageID.5. However, according to PetroJebla, it never received the propane gas or the funds. On May 16, 2019, it filed its complaint against Defendants alleging breach of contract.

On June 5, 2019, Mr. Betron filed an answer to the complaint pro se. ECF No. 11. The next week, the Court issued an order directing BEI and BLPG to obtain counsel. ECF No. 12. The Court explained that Mr. Betron could not represent BEI and BLPG because incorporated entities may not proceed without legal counsel. *Id.* On June 28, 2019, David L. Powers filed an appearance on behalf of Mr. Betron, BEI, and BLPG. ECF No. 13.

On July 3, 2019, PetroJebla filed a motion for judgment on the pleadings, contending that the corporate veils of BEI and BLPG should be pierced to find Mr. Betron personally liable for the alleged breach of contract. ECF No. 14. On July 19, 2019, Defendants filed a motion to amend their answer, contending that

> Richard Betron is not an attorney and is not informed regarding the rules of practice of this Court. As a result, the answer is incomplete, and failed to respond to the allegations of paragraphs 24-56 of Plaintiff's complaint, including Plaintiff's conclusory allegations aimed at piercing the corporate veil of the Defendant corporations.

ECF No. 17 at PageID.100-101. [4] Defendants' motion to amend their answer will be granted and PetroJebla's motion for a judgment on the pleadings will be granted in part. Each motion will be addressed in turn.

## II.

---

[4] Defendants had filed a previous motion to amend their answer, but did not attach a copy of their proposed amended answer. ECF No. 16. In their latest motion to amend their answer, Defendants included a copy of their proposed amended answer. ECF No. 17.

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the court's leave and that "the court should freely give leave when justice so requires." Fed. R. Civ. Pr. 15(a)(2). Denial of a motion to amend is appropriate, however, where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**A.**

PetroJebla contends that Defendants' motion should be denied because Defendants' proposed amended answer does not comply with Federal Rule of Civil Procedure 8. Rule 8 provides:

> **(1) In General.** In responding to a pleading, a party must:
>
> > **(A)** state in short and plain terms its defenses to each claim asserted against it; and
> >
> > **(B)** admit or deny the allegations asserted against it by an opposing party.
>
> **(2) Denials—Responding to the Substance.** A denial must fairly respond to the substance of the allegation.
>
> **(3) General and Specific Denials.** A party that intends in good faith to deny all the allegations of a pleading…may do so by a general denial…
>
> **(4) Denying Part of an Allegation.** A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.
>
> **(5) Lacking Knowledge or Information.** A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.
>
> **(6) Effect of Failing to Deny.** An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.

Fed. R. Civ. P. 8(b). In summary, Rule 8 permits only three possible ways a party may respond to an allegation: (1) admit it; (2) deny it; or (3) state that the party lacks knowledge or information sufficient to form a belief about the truth of the allegation.

PetroJebla claims that Paragraphs 8, 9, 10, 11, 12, 14, 33, 38, and 39 of Defendants' proposed amended answer do not comply with Rule 8.

**1.**

Paragraph 8 of PetroJebla's complaint provides:

> Defendant Richard E. Betron, Jr. ("Betron") is, upon information and belief, an individual residing within this District in Twining, Michigan and/or Sanford, Michigan, and the sole principal of the Betron Entities.

ECF No. 1 at PageID.3. Paragraph 8 of Defendants' proposed amended answer provides:

> Admitted, except as to Plaintiff's allegation that Betron is the "sole principal" of the Betron entities, which Defendant denies for lack of understanding of what Plaintiff means by that term.

ECF No. 17 at PageID.104.

PetroJebla contends that Paragraph 8 of Defendant's proposed amended answer "is an evasive response that does not 'fairly respond to the substance of the allegation.'" ECF No. 19 at PageID.128-129 (quoting Fed. R. Civ. P. 8(b)(2)). PetroJebla explains that

> The term "principal" is commonly used -- and commonly understood -- as a shorthand way to identify the sole shareholder, officer, or member of an entity having authority and control over the entity's operations…

ECF No. 19 at PageID.129. PetroJebla then lists numerous cases using the term "sole principal."

Paragraph 8 of Defendants' proposed amended answer complies with Rule 8, specifically Rule 8(b)(5) which provides that a party "that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial." Paragraph 8 of Defendants' proposed amended answer expressly explains that Defendants denied

PetroJebla's allegation regarding Mr. Betron as the sole principal because the language is general in nature and could refer to different sets of factual circumstances. Accordingly, they responded that they "lacked understanding." ECF No. 17 at PageID.104. The language adequately conveys that Defendants lacked the understanding to respond to the allegation.

**2.**

Paragraph 14 of PetroJebla's complaint provides

> The Contract required payments to be made by PetroJebla to BLPG, through a Chemical Bank account in "Midlan" (sic), Michigan. BLPG was not, however, a signatory to the Contract.

ECF No. 1 at PageID.4. Paragraph 14 of Defendants' proposed amended answer provides.

> Admitted that Betron L.P. Gas, Inc. was not a signatory to any contract with Plaintiff. Admitted that any payments under the writing were to be made through a Chemical Bank account in Midland, Michigan. Defendants *neither admit nor deny* the remainder of the allegations of paragraph 14, as the document speaks for itself.

ECF No. 17 at PageID.105 (emphasis added). Paragraphs 12 and 50 of Defendants' proposed amended answer also contains the phrase "neither admit nor deny."

The language "neither admit nor deny" does not qualify as one of the three ways in which a party may respond to an allegation under Rule 8. Rule 8 requires a party to "admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(1)(B). The phrase "neither admit nor deny" does not comply with the rule. Accordingly, Defendants will be directed to respond to the allegation in their amended answer.

**3.**

PetroJebla claims that Paragraphs 9, 10, 11, 33, and 39 of Defendants' proposed amended answer use the language "No response required, same being a conclusion of law." ECF No. 17 at PageID.104, 107. PetroJebla is correct. The statement "No response required" does not comply with Rule 8, which requires a party to "admit or deny the allegations asserted against it by an

opposing party." Fed. R. Civ. P. 8(b)(1)(B); *see also Kegerise v. Susquehanna Township School District*, 321 F.R.D. 121, 124 (M.D. Pa. Feb. 3, 2016) ("Rule 8(b) does not permit a party to refuse to respond to an allegation by asserting it is a conclusion of law."); *Certain Underwriters at Lloyd's v. SSDD, LLC,* 2013 WL 6801832, at *4 (E.D. Mo. Dec. 23, 2013) (holding that the defendant's "answer that it need not respond to 'legal conclusions' finds no support in the language of Rule 8(b), which requires a response to all allegations."). Accordingly, Defendants will be directed to resolve this language in their proposed amended answer.

**B.**

PetroJebla further contends that Defendants' motion to amend their answer should be denied because the proposed amended answer's second affirmative defense is "insufficient on its face." ECF No. 19 at PageID.132.

An affirmative defense "raises matters outside the scope of plaintiff's prima facie case." *Instituto Nacional de Comercializacion Agricola v. Cont. Ill. Nat'l. Bank & Trust Co.*, 576 F.Supp. 985, 991 (N.D. Ill. 1983) (quotations omitted). It is any set of facts other than those alleged by the plaintiff which, if proven, would defeat or mitigate the legal consequences of the defendant's conduct for which the defendant would have the burden of proof. *See Martin v. Weaver*, 666 F.2d 1013, 1019 (6th Cir. 1981) ("The burden of proving an affirmative defense by a preponderance of the credible evidence is on the party asserting the defense.").

Rule 8(c) governs affirmative defenses and provides:

> **(1) *In General*.** In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: accord and satisfaction; arbitration and award; assumption of risk; contributory negligence; duress; estoppel; failure of consideration; fraud; illegality; injury by fellow servant; laches; license; payment; release; res judicata; statute of frauds; statute of limitations; and waiver.

Fed. R. Civ. Pr. 8(c)(1).

The pleading standard for affirmative defenses is not consistent throughout federal district courts. Some courts have held that affirmative defenses should be held to the heightened pleading standard outlined in *Bell Atlantic v. Twombly*, requiring a complaint to contain "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 554, 570 (2007); *see Microsoft Corp. v. Lutian*, 2011 WL 4495631, at *2 (N.D. Ohio Sept. 27. 2011); *HCRI TRS Acquirer, LLC v. Iwer*, 708 F.Supp. 2d 687, 691 (N.D. Ohio 2010); *Shinew v. Wszola*, 2009 WL 1076279, at *4-5 (E.D. Mich. 2009). These courts have reasoned that

> [W]hat is good for the goose is good for the gander and…it makes neither sense nor is it fair to require a plaintiff to provide the defendant with enough notice that there is a plausible, factual basis for her claim under one pleading standard and then permit a defendant under another pleading standard simply to suggest that some defense may possibly apply in the case.

*Racick v. Dominion Law Associates*, 270 F.R.D. 228, 233 (E.D. N.C. Oct. 6, 2010) (quotation omitted). They have also noted that "[b]oilerplate defenses clutter the docket and…create unnecessary work" in addition to increasing the amount of discovery. *Safeco Ins. Co. of Am. v. O'Hara Corp*, 2008 WL 2558015, *1 (E.D. Mich. June 25, 2008).

However, other courts have declined to hold affirmative defenses to the heightened *Twombly* standard. They reason that *Twombly* is not applicable to affirmative defenses because Rule 8(c) governing affirmative defenses is too dissimilar to Rule 8(a) governing complaints. *See First Nat. Ins. Co. of America v. Camps Services, Ltd.*, 2009 WL 22861, *2 (E.D. Mich. Jan. 5, 2009) ("*Twombly* raised the requirements for a well-pled complaint under Fed. R. Civ. P. 8(a)'s 'short and plain statement' requirement…No such language, however, appears within Rule 8(c), the applicable rule for affirmative defenses.") (citation omitted); *Exclusively Cats Veterinary Hosp., P.C. v. Pharm. Credit Corp.*, 2014 WL 4715532, at *3 (E.D. Mich. Sept. 22, 2014); *Meyers v. Village of Oxford*, 2019 WL 653807 (E.D. Mich. Feb. 15, 2019).

The heightened *Twombly* standard should, in the Court's view, also apply to the affirmative defense. Despite the differences in the language of Rule 8(a) and Rule 8(c), it is reasonable to hold plaintiffs and defendants to the same heightened pleading standard. For similar reasons, a defendant's affirmative defense presents a claim like a plaintiff's complaint. Accordingly, both should be held to a reciprocal standard.

Defendants' affirmative defense meets neither the fair notice standard nor the heightened *Twombly* standard. The affirmative defense references a "true agreement," but provides no other explanation as to the nature of this "true agreement" or how it relates to the contract discussed in PetroJebla's complaint. It does not place PetroJebla on notice of Defendants' intended defense and it is nowhere near compliant with the heightened *Twombly* standard. Defendants will be directed to revise their affirmative defense to present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 554, 570 (2007)

### III.

PetroJebla's motion for judgment on the pleadings will be granted in part and denied in part. The Sixth Circuit has held, "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Coyer v. HSBC Mort. Services, Inc.*, 701 F.3d 1104, 1107 (6th Cir. 2012) (citations and internal quotation marks omitted).

PetroJebla contends that Count IV of its complaint, "Piercing the Corporate Veil," should be granted on the pleadings. ECF No. 14. However, piercing the corporate veil is a legal doctrine, not a claim or cause of action. *In re RCS Engineered Prods. Co.*, 102 F.3d 223, 226 (6th Cir. 1996) ("[A]n alter ego claim is not by itself a cause of action. Rather it is a doctrine…"); *Brennan v.*

*Nat'l Action Fin. Serv.*, 2012 WL 3888218, at *3 (E.D. Mich. Sept. 7, 2012) ("It is well established that piercing the corporate veil is not itself a cause of action."). PetroJebla does not have a "veil piercing claim." Instead, it is attempting to assign liability using the veil piercing doctrine, which

> [F]astens liability on the individual who uses a corporation merely as an instrumentality to conduct his or her own personal business, and such liability arises from fraud or injustice perpetuated not on the corporation but on third persons dealing with the corporation.

*In re RCS Engineered Prods. Co.*, 102 F.3d at 226 (quoting 1 Fletcher Cyclopedia on the Law of Private Corporations §41.10).

**A.**

PetroJebla argues that Defendants accepted as true PetroJebla's claims of piercing the corporate veil in paragraphs 49 to 56 of the complaint when Mr. Betron filed his initial answer and failed to address these paragraphs. The paragraphs provide:

> 49. PetroJebla repeats and realleges each paragraph of the Complaint as if fully set forth herein.
>
> 50. Betron is believed to be the sole owner and principal of the Betron Entities.
>
> 51. The Betron Entities are mere instrumentalities of one another and of Betron individually, as Betron failed to observe corporate formalities with respect to one or both of the Betron entities, failed to properly capitalize one or both of the Betron entities, commingled personal and business funds, and otherwise failed to treat the Betron Entities as business entities separate and distinct from one another or from his own personal affairs.
>
> 52. That the Betron Entities are mere instrumentalities of one another and of Betron individually is demonstrated by, including, but not limited to, the manner in which the Contract was memorialized and executed, as described above; by BLPG's receipt of payments from PetroJebla for propane gas that was to be delivered by BEI; and by Betron's failure to maintain proper filings for the Betron Entities with the State of Michigan's Department of Licensing and Regulatory Affairs. BLPG was, in fact, a non-existent entity when it was receiving funds from PetroJebla, having been dissolved in 2002, long prior to the inception of the transaction between PetroJebla and Defendants. (See EXHIBIT 6, printout from State of Michigan LARA database regarding BLPG.)

53. As described herein, Betron and one or both of the Betron Entities received funds from PetroJebla in exchange for Defendants' agreement to ship quantities of propane gas to PetroJebla. As further described herein, Defendants then retained, commingled, and/or used a portion of those for purposes other than fulfilling Defendants' obligation to ship propane gas to PetroJebla. In so doing, Betron used one or both of the Betron Entities to commit a fraud or wrong upon PetroJebla.

54. As a result of Defendants' actions, as controlled and orchestrated by Betron, PetroJebla has sustained an unjust loss or injury, namely, the loss of the $209,460 in funds Defendants retained and misappropriated to their own uses, plus any and all incidental, consequential, and special damages PetroJebla has sustained as a result of Defendants' misconduct.

55. Under the circumstances described herein, respecting the separate corporate existences of the Betron Entities would subvert justice.

56. For these reasons, the corporate veils of the Betron Entities should be pierced and Defendants should be held jointly and severally liable for any and all damages and other monetary relief awarded to PetroJebla.

ECF No. 1 at PageID.10-12.

In response, Defendants' proposed amended answer provides:

49. Defendants repeat their answers to Plaintiff's allegations.

50. Neither admitted nor denied, Defendants not having sufficient information to reply to Plaintiff's "beliefs" or the precise meaning of the term "principal."

51. Denied as untrue.

52. Denied as untrue.

53. Denied as untrue.

54. Denied as untrue.

55. Denied as untrue.

56. Denied as untrue.

ECF No. 17 at PageID.108-109.

As explained above, Defendants will be granted leave to file their amended answer. Accordingly, PetroJebla's argument that Defendants accepted as true Paragraphs 49-56 of the complaint by not admitting or denying them in their initial answer is moot.

**B.**

PetroJebla further argues that it should be granted judgment on its pleadings of piercing the corporate veil because BEI and BLPG are Mr. Betron's alter-egos.

Michigan law presumes that "parent and subsidiary corporations are separate and distinct entities." *Seasword v. Hilti, Inc.*, 537 N.W.2d 221, 224 (Mich. 1995). In determining whether to pierce the corporate veil, three requirements must be developed factually: (1) the corporate entity must be a "mere instrumentality" of another entity, (2) the corporate entity must be used to perpetuate fraud, and (3) it must have caused loss or injury to the plaintiff. *Foodland Distributors v. Al-Naimi*, 559 N.W.2d 379, 381 (Mich. Ct. App. 1996). In making this determination, factors to be considered include "undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704 (6th Cir. 1988). The "inquiry tends to be intensively fact-driven." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co. Ltd.*, 475 F.3d 783, 798 (6th Cir. 2007).

As will be explained below, PetroJebla has not advanced sufficient evidence to pierce BEI's corporate veil. However, it has advanced sufficient evidence to pierce BLPG's corporate veil.

**1.**

In arguing that BEI's corporate veil should be pierced, PetroJebla contends that "the manner in which the Contract was executed is indicative of Betron's disregard for corporate formalities." ECF No. 14 at PageID.74. The parties' one-page agreement lists under the heading "From" the names "Betron Enterprise" and "Richard E. Betron President." ECF No. 1-2. The agreement also identifies Mr. Betron as the seller followed by his signature and his signature block identifying him as the president of BEI. *Id.* PetroJebla argues that "while 'Betron Enterprise' was nominally the contract party, Betron was, arguably, the contracting party in his individual capacity by virtue of his identification as the 'seller.'" ECF No. 14 at PageID.76.

The contract does not substantiate PetroJebla's allegation that BEI disregarded corporate formalities. The contract identifies "Richard E. Betron Jr." as the seller, and is immediately followed by his signature identifying him as the president of BEI. Though not conclusive, it indicates that Mr. Betron was acting as the president of BEI when entering into this contract, not as an individual. There are no more facts alleged to support the finding that BEI is a mere instrumentality of Mr. Betron and that he is using it to perpetuate fraud. *See Servo Kinetics, Inc.* 475 F.3d at 798 ("The propriety of piercing the corporate veil is highly dependent on the equities of the situation, and the inquiry tends to be *intensively fact-driven*.") (emphasis added). PetroJebla has furnished no evidence of "undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." *Laborers' Pension Trust Fund*, 872 F.2d at 704. Accordingly, at this time Mr. Betron will not be held personally liable for the actions of BEI.

**2.**

However, Mr. Betron will be held personally liable for the actions of BLPG. Paragraph 7 of PetroJebla's complaint provides:

> Defendant Betron LP Gas, Inc. ("BLPG," and together with BEI, the "Betron Entities") is, upon information and belief, a Michigan corporation, having its principal place of business located within this District at 115 State Street, Twining, Michigan.

ECF No. 1 at PageID.2-3. Paragraph 7 of Mr. Betron's original answer filed pro se provides that "Betron L.P. Gas Inc. does not exist." ECF No. 11 at PageID.56.

PetroJebla has furnished a report from the Michigan Department of Licensing and Regulatory Affairs which provides that "Betron L.P. Gas, Inc." was dissolved in 2002. ECF No. 1-7. The dissolution predates the creation of the contract by 15 years. It is therefore unclear why the contract between Mr. Betron/BEI and PetroJebla directed PetroJebla to make payments to a bank account titled "Betron LP Gas Chemical Bank."

As explained above, Defendants will be granted leave to amend their answer. However, the Sixth Circuit has held that "pleadings withdrawn or superseded by amended pleadings are admissions against the pleader in the action in which they were filed." *Pennsylvania Railroad Company v. City of Girard*, 210 F.2d 437, 440 (6th Cir. 1954). Mr. Betron's statement in his original answer, "Betron L.P. Gas Inc. does not exist" will therefore be considered an admission. His statement is corroborated by the report from the Michigan Department of Licensing and Regulatory Affairs.

In their response to PetroJebla's motion, Defendants do not address Mr. Betron's admission that BLPG does not exist nor do they address the report from the Michigan Department of Licensing and Regulatory Affairs. Accordingly, PetroJebla's argument is uncontested and Mr. Betron will be held personally liable for BLPG's conduct. Though BLPG does not appear to exist

as a corporation, it will remain a defendant in the case because it is named in PetroJebla's complaint and it accepted service of summons on May 22, 2019. ECF No. 8.

**IV.**

Accordingly, it is **ORDERED** that PetroJebla's motion for judgment on the pleadings, ECF No. 14, is **DENIED WITHOUT PREJUDICE IN PART** and **GRANTED IN PART**. At this time, Mr. Betron will not be considered personally liable for BEI's actions. However, he is personally liable for BLPG's actions.

It is further **ORDERED** that Defendants' second motion for leave to file an amended answer (attached to their motion as "Exhibit A"), ECF No. 17, is **GRANTED**, provided Defendants modify the answer to comply with Rule 8 as directed in this opinion.

It is further **ORDERED** that Defendants shall file the amended answer on or before **December 9, 2019**.

It is further **ORDERED** that Defendants' first motion for leave to file an amended answer, ECF No. 16, is **DENIED** as moot.

Dated: December 3, 2019          s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge